Case No. 12-2694

_____

In The United States Court of Appeals
For the Seventh Circuit

_____

RICHARD FEDDER

Appellant,

vs.

ADDUS HEALTHCARE, INC.; LORIE HUMPHREY; and KIM EVANS;

Defendants-Appellees.

_____

On Appeal from the United States District Court for the Southern District of Illinois,
Case No. 08-C-200. The Honorable David R. Herndon, Judge Presiding.


<u>REPLY BRIEF OF APPELLANT</u>


Richard Fedder
Attorney
ARDC#6272204
144 Pineview Rd.
Carbondale, IL 62901
Telephone: (618) 201-5834

# TABLE OF CONTENTS

Cover Page ...................................................................................................................... i

Table of Contents ........................................................................................................... ii

Table of Authorities ...................................................................................................... iii

I. STANDARD OF REVIEW ........................................................................................1

II. POLICY CONSIDERATIONS ..................................................................................2

III. STATUTORY CONSTRUCTION ...........................................................................3

      A.  42 U.S.C. Section 1927 ........................................................................................3

      B.  Rule 11 Distinguished .........................................................................................5

      C.  42 U.S.C. § 1988 Distinguished .........................................................................6

      D.  Case Law – The "Objective Bad Faith" Standard ..............................................7

      E.  The Only Case Cited By Addus As Precedent Is Not Comparable ...........................13

IV.  JUDGE HERNDON'S IMPOSITION OF SANCTIONS WITHOUT A HEARING WAS A VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT. ............15

V.  JUDGE HERNDON'S ARTICULATED FINDINGS DO NOT SUPPORT 1927 SANCTIONS AS A MATTER OF LAW ...................................................................................18

VI.  EVEN UNDER TCI'S OBJECTIVE BAD FAITH STANDARD, ATTORNEY SANCTIONS ARE NOT WARRANTED .................................................................................20

Certificate of Compliance ..............................................................................................22

Certificate of Service ......................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) ........................................11

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ..................................................1

*Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160 (7th Cir.1983) ............................... 3,7,10-11

*Brown v. Federation of State Medical Boards*, 830 F.2d 1429 (7th Cir. 1987) ............................17

*Butner v. United States*, 440 U.S. 48 (1979)................................................................12

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978) .............................................. 3,6-7,19

*Claiborne v. Wisdom* 414 F.3d 715 (7th Cir. 2005); ...................................................... 1,13-14

*Dahnke v. Teamsters Local 695,* 906 F.2d 1192 (7th Cir. 1990)........................................... 5-6,11

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)........................................................10

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.,*549 F.3d 1079 (7th Cir. 2008)................................................................................................1

*Hamer v County of Lake*, 819 F.2d 1362 (7th Cir.1987) .................................................... 7,15-16

*In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985) .................................................................. 8-13,20

*Indianapolis Colts v. Mayor of Baltimore*, 775 F.2d 177 (7th Cir.1985) ......................................6

*Johnson v. Cherry,* 422 F.3d 540 (7th Cir.2005) .................................................................. 2-3,16

*Kapco Mfg. Co., Inc. v. C & O Enters, Inc.*, 886 F.2d 1485 (7th Cir. 1989)................................8

*Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (7th Cir.1968)................................................5

*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223 (7th Cir.1984) ............................................. 2,8-9

*Kotsilieris v. Chalmers,* 966 F.2d 1181 (7th Cir.1992) ........................................................8

Kovilic Construction Co, Inc. v. Missbrenner 106 F.3d 768 (7th Cir 1997) ....................................2

*Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928 (7th Cir.1989)......................................3

*McCandless v. Great Atlantic and Pacific Tea Co., Inc.,* 697 F.2d 198 (7th Cir.1983)........... 4,7-8

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)........................................................17

*Ordower v. Feldman,* 826 F.2d 1569 (7th Cir 1987) ...................................................... 8-9

*Overnite Transportation Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789 (7th Cir.1983)........................................................................................................ 4-5,7

*Pacific Dunlop Holdings v. Barosh,* 22 F.3d 113 (7th Cir. 1994). .................................3

*Puckett v. Soo Line R.R.,* 897 F.2d 1423, 1425 (7th Cir. 1990)......................................1

*Reid v. United States,* 715 F.2d 1148 (7th Cir. 1983) ...........................................5,7-8

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980) ................................................7

*Samuels v. Wilder,* 906 F.2d 272 (7th Cir.1990) ........................................5-6,11,15,16

*Schlifke v. Seafirst Corp.,* 866 F.2d 935, 937 (7th Cir. 1989)................................. 1-2

*Sunstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033 (7th Cir. 1976)................................ 9-11

*Suslick v. Rothschild Sec. Corp.,* 741 F.2d 1000 (7th Cir. 1984) ................................4,7

*Tcherepnin v. Knight,* 389 U. S. 332 (1967)............................................................11

*Thornton v. Wahl,* 787 F.2d 1151 (7th Cir. 1986) ...............................................6,17

*Tuf-Flex Glass v. NLRB,* 715 F.2d 291 (7th Cir. 1983) ...........................................7

*Walter v. Fiorenzo,* 840 F.2d 427 (7th Cir. 1988) .............................................8

**Statutes**                                                                          **Page**

28 U.S.C. § 1927................................................................................. 1,3-21

42 U.S.C. § 1981 ...............................................................................20-21

42 U.S.C. § 1983.................................................................................20-21

42 U.S.C. § 1988.................................................................................6,15-17

Securities Exchange Act of 1934 § 10b ................................................... 10-11

U.S. Const., Amendment 14 .................................................................15

**Other Authorities**                                                                 **Page**

Federal Rule of Civil Procedure 11 ............................................................5-7,11,15-17

Federal Rule of Civil Proceedure 56(c) ...........................................................................1

H.R. CONF. REP. No. 1234, 96th Cong., 2d Sess. 8 (1980), *reprinted in* 1980 U.S. CODE CONG. & *ADmN.* NEws, 2716, 2782 ................................................................... 3-5,9,15

Securities Exchange Act, Rule 10b-5 .................................................................. 10-11

Webster's Third New International Dictionary (defining vexatious) ............................................4

# I. STANDARD OF REVIEW

The Defendants say the standard of review is abuse of discretion.  But it is not so one-dimensional.

First, "[t]he question of how to interpret § 1927 is one of law, and so [requires] *de novo* review." *Claiburne v. Wisdom* 414 F.3d 715, 721 (7th Cir. 2005).  Fedder has identified several fallacies in Judge Herndon's interpretation of this statute, for which *de novo* review is proper.

Second, the underlying laws governing this case – such as whether 42 U.S.C. § 1983 applies to retaliation cases, or how to determine whether a private actor committed state action  – also require *de novo* review.  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*,549 F.3d 1079, 1086-87 (7th Cir. 2008).

Third, because this case was decided by Summary Judgment, which ruling is currently under appeal in case # 11-3252, and because the Court below never held any hearings or discussions with the attorneys, nor examined any witnesses, the standard of review for determining substantive facts should be the same as in any ordinary review of summary judgment.

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed R. Civ P. 56(c).  Summary judgment is denied if it is plausible that a jury might return a verdict for the plaintiff.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-7 (1986).

Upon review, an appellate court examines the facts in the record *de novo*.  *Puckett v. Soo Line R.R.*, 897 F.2d 1423, 1425 (7th Cir. 1990).  The Court must draw inferences from the record in the light most favorable to the non-moving party.  *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 937 (7th Cir. 1989).

Presumably, that is exactly what this Court intends to do here – make a summary

judgment determination in case 11-3252 by reviewing the facts *de novo,* and in the light most favorable to Tate; then move on to determine whether sanctions are appropriate, informed by its findings of fact from the *de novo* review.

Otherwise, this Court would be put in the anomalous position of reviewing the facts in case 11-3252 *de novo*, while reviewing those same facts in case 12-2694 for abuse of discretion. That could lead to inconsistent results – that Tate has established a material question of fact as to whether the Addus Defendants participated in a conspiracy to retaliate/discriminate against him (under *de novo* review), but that sanctions against Fedder are justified because the Complaint was meritless (under deferential review).

When imposing section 1927 sanctions, a Court is not making a judgment about the substantive facts or law of the case. It is making a judgment, in light of the substantive facts and law, and also in light of any procedural expectations in the case, that the attorney acted vexatiously.

An appellate court should review a district court's *decision to sanction* an attorney for abuse of discretion. *Kovilic Constr. Co. v. Missbrenner,* 106 F.3d 768, 771 (7th Cir.1997). But that refers to the *decision* process only (whether the attorney's behavior deserves sanctions). It does not mean the appellate court must defer to the district court's prior findings of fact or law in summary judgment.

## II. POLICY CONSIDERATIONS

Even so, abuse of discretion review for attorney sanctions should not be toothless. *Johnson v. Cherry,* 422 F.3d 540, 549 (7th Cir.2005). In many cases cited herein, the appellate court either reversed or remanded the decision to impose sanctions. See e.g. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223 (7th Cir.1984) (reversed because district court made no finding of intentional misconduct), *Pacific Dunlop v. Barosh* 22 F.3d 113 (7th Cir 1994) (reversed because law firm's tactics causing unnecessary delay were not intentionally vexatious); and *Johnson*,

supra (remanded because the court imposed sanctions without first notifying attorney and giving her an adequate opportunity to respond)

Attorney sanctions have impact beyond the merits of an individual case. Sanctions affect an attorney's reputation and ability to remain solvent. More generally, they affect the vigor and creativity of advocacy by other members of the bar. Therefore, something less than total deference should be given to a district court's decision to impose sanctions. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir.1989).

This concern is amplified in civil rights cases where "[t]he plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420-2 (1978)). The dictates of Congress call for an aggressive and creative attack by civil rights plaintiffs to pursue enforcement of civil rights laws. *Id.* at 416. Vigorous advocacy often changes the law and creates new precedent. It should not be penalized just because it fails to persuade. *Id.*

### III. STATUTORY CONSTRUCTION

### A. 42 U.S.C. Section 1927

Section 1927 was amended in 1980 to include payment of attorney's fees as a possible sanction, in certain cases. The stated purpose was to deter dilatory conduct. House Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S.Code Cong. & Ad.News 2781, 2782 ("Conference Report"). Because section 1927 is a punitive (rather than compensatory) statute, its language must be strictly construed. *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir.1983).

In his initial Brief on appeal ("Brief"), Fedder parsed § 1927 as follows:

> [T]here are four *prima facie* elements which must be met before imposing sanctions: (1) action(s) by the attorney; (2) which multiply the proceedings; (3) unreasonably; and (4) vexatiously.

8

> A plain reading also shows that the statute limits penalties . . . to no more
> than the *excess attorney's fees* caused by [the] vexatious attorney.

Appellant's Brief ("Brief") at 15.

Fedder further noted that Webster's dictionary defines "vexatious" as "lacking justification and *intended* to harass" (emphasis added).  After quoting this same definition, *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983) applied it to reverse the district court's sanctions as abuse of discretion because Chicago Industrial identified "no instances [identified] where the attorneys for Overnite ... engaged in *intentional* misconduct,"  and the district court pointed to no "'vexatious' conduct other than the filing of the lawsuit."  *Id.* at 275.   Accord: *Suslick v. Rothschild Securities,* 741 F.2d 1000, 1006 (7th Cir. 1984) (sanctions not warranted despite finding complaint was frivolous because the attorney did not act with *intentional* bad faith); *McCandless v. Great Atlantic and Pacific Tea Co., Inc.*, 697 F.2d 198, 199, 201 (7th Cir.1983) (sanctions warranted – district court found intentional misconduct where counsel admitted "he was 'fully aware' of exhaustion requirement but filed the complaint anyway at client's insistence).

This was precisely Congress' purpose in amending section 1927.  Attorney's fees should be imposed "only where the attorney *intentionally* acts without a plausible basis."   Conference Report at 8 (emphasis added).  Congress explained that requiring *intentional* misconduct would "protect three important interests":

> 1.  "the societal interest in encouraging free access to the courts;"
>
> 2.  "the interest of the client in obtaining legal counsel who otherwise might be chilled from taking a close case;"  and
>
> 3. "the lawyer's ethical obligation to represent his or her client zealously within the bounds of the law."

Thus, both Congressional intent and the plain language of 28 U.S.C. § 1927 show it was designed to sanction an attorney only for *intentional* misconduct that is vexatious in nature.

In addition, the conduct must actually *multiply* the court's proceedings unreasonably.  A court may impose section 1927 fees only to sanction needless delay by counsel.  *Reid v. United States*, 715 F.2d 1148, 1154 (7th Cir. 1983).

In Overnite Transportation Co, 697 F.2d at 794, the Seventh Circuit explained that filing a complaint is not," in and of itself, multiplicitous."  *Delay* of litigation is an irreducible element:

> [R]eview of the legislative history … reveals the congressional intent to impose sanctions only upon those attorneys who needlessly delay ongoing litigation. The House Conference Report explains section 1927['s]  purpose is "to broaden the range of increased expenses [which can be imposed upon] an attorney who engages in dilatory litigation practices."

Therefore, Overnite rejected as a matter of law that the mere act of filing a frivolous Complaint could be sanctionable.  *Id*.  Accord, *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, note 6 (7th Cir. 1990).

In addition, the *Overnite* Court stated: "It is the law of this circuit that the power to assess costs on the attorney  . . . should [be] exercise[d] only in instances of a serious and studied disregard for the orderly process of justice."  697 F.2d at 275 (citing *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968)).  In *Kiefel,* the district court found a "studied disregard for the orderly process of justice" because the offending attorney *intentionally* interfered with pretrial discovery, made *mis-statements* of facts and law to the jury, injected inflammatory statements *calculated to prejudice* the jury, and conducted improper cross-examination based on facts not in evidence.  (emphasis on words of intentionality)

By contrast, in reversing district court sanctions, *Overnite* stated: "[T]he district court did not point to any 'vexatious' conduct other than the filing of the lawsuit."  697 F.2d at 275.  That alone did not show a studied disregard for the orderly process of justice.

### B. Rule 11 Distinguished

Federal Rule of Civil Procedure 11 is also punitive.  But "[s]ection 1927 and Rule 11 are addressed to different conduct."  *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir.1990).  Section

1927 addresses dilatory conduct that prolongs litigation; Rule 11 addresses frivolous and unreasonable pleadings. *Id.* (Section 1927 might apply but not Rule 11). Accord *Dahnke* 906 F.2d at 1199-1200, note 6 (District Court may not impose Rule 11 sanctions for pleadings made in state court; Section 1927 inapplicable because there was no continuing duty to investigate legal basis of claim after it was removed to federal court.).

Rule 11 sanctions may be imposed when a complaint is *objectively* frivolous, whether or not the attorney so intended. *Indianapolis Colts v. Mayor of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985). *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) (Good faith is no defense.). But section 1927 requires a showing of bad faith – specific intent to multiply the proceedings for a vexatious purpose such as to delay or harass.

Rule 11 requires an attorney to make "reasonable" investigation before filing a claim, and therefore permits the district court to sanction an attorney for not doing so. Section 1927 does not mandate a reasonable investigation before filing, and so the court cannot sanction an attorney for failing to do so. *Samuels* 906 F.2d at 275.

In *Dahnke,* for example, the district court found that "[a]ny reasonable [attorney] should have known" the complaint was frivolous, but section 1927 was not implicated because: "Dahnke's failure to investigate . . . his claim before filing it in federal court [did not] multipl[y] the proceedings ... unreasonably and vexatiously." 906 F.2d (note 6). The mere failure to investigate was held insufficient to trigger section 1927 sanctions. *Id.*

## C. 42 U.S.C. § 1988 Distinguished

Section 1988 is a fee-shifting statute. Its purpose is compensatory, not punitive. Like Rule 11, Section 1988 addresses pleadings. *Christiansburg Garment Co.* 434 U.S. at 422 (fees may be assessed against a plaintiff if the "claim was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.").

Unlike Rule 11, Section 1988 only authorizes imposition of fees against litigants, not

their attorneys. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980); *Hamer v County of Lake* 819 F.2d 1362 (7th Cir.1987) (vacating district court's sanction because sanctions against the attorney are not authorized under section 1988). Moreover, the standard for imposing section 1988 sanctions as set forth In *Christianburg* – that the original complaint was frivolous and objectively unreasonable, or that plaintiff continued to litigate after it became obviously so (through discovery) – is not the same standard as for imposing sanctions under section 1927.

### D. Case Law – The "Objective Bad Faith" Standard

From 1980 to 1984, Seventh Circuit jurisprudence made clear that the district court must find *intentional* bad faith conduct before imposing section 1927 sanctions. The cases divided into two groups. In one group, sanctions were denied *per se* because the claims had some plausible basis (*i.e.* they were "colorable"); whence, good faith was inferred. See, *e.g. Badillo*, 717 F.2d at 1166 (although claims presented no genuine issue of material fact, it was not an "extreme example"); *Tuf-Flex Glass v. NLRB*, 715 F.2d 291, 298 (7th Cir. 1983) (despite certain misrepresentations of fact by counsel, complaint was otherwise colorable; so sanctions were denied); *Overnite Transportation Co.*, 697 F.2d at 794-95 (good faith filing supported by arguable legal theory is not considered "vexatious"). In the other group, where no colorable basis was found, Courts still insisted upon some showing of: (a) intentional misconduct which (b) multiplied the proceedings. *Suslick*, 741 F.2d at 1006 (despite frivolous complaint, sanctions not warranted because no showing that attorney acted with *intentional* bad faith); *Reid*, 715 F.2d at 1154 (section 1927 sanctions not assessed even though complaint was legally frivolous, because no "strategy of delay" found*); McCandless*, 697 F.2d at 199, 201 (sanctions imposed where counsel admitted he knew the claim lacked merit but filed anyway at client's insistence).

Of course, intent can be demonstrated by circumstantial rather than direct evidence. "The law may be so clear that persistence in a course of litigation could be evidence of bad faith." *Reid* at 1154. Accord, *McCandless* supra. Or, an attorney might persist in an unreasonable

course of action after fair warning from the court or opposing counsel. *Walter* v. *Fiorenzo* 840 F.2d 427 (7th Cir. 1988) (attorney sanctioned for persisting in pursuing claims against fourth defendant after Court dismissed first three as frivolous); *Kapco Manufacturing Co,, Inc. v. C & O Enterprises, Inc.* 886 F.2d 1485 (7th Cir 1989); *In Re TCI*, Ltd 769 F.2d 441 (7th Cir. 1985).

One can also act vexatiously, *without malice*. See *In Re TCI* supra. Malice occurs if an attorney acts without a plausible legal basis *and* for an unethical purpose (such as to bully the opposing party into settlement). But if an attorney merely uses overzealous and unreasonable delaying tactics with intent to gain a perceived litigation advantage, such action might not be malicious, but still could be sanctionable,

None of this provides authority, however, for confusing intentional misconduct with negligent, or even recklessly negligent misconduct. Yet, somehow, the language of negligence has slipped into standard Seventh Circuit dicta. In *Kotsilieris v. Chalmers*, for example, this Court articulated a doctrine of "objective bad faith", supposedly derived from prior case law. "[W]e have held that the bad faith standard has an objective component, and ... reckless and indifferent conduct satisfies this standard." 966 F.2d 1181, 1184-5 (7th Cir. 1992). But, in the strict legal sense, the Seventh Circuit had never before made such a "holding".

The authority cited by *Kotsilieris* is *Ordower v. Feldman,* 826 F.2d 1569 (7th Cir 1987). *Ordower* explained "objective bad faith" as follows:

> In *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir.1984), this circuit stated that to violate Sec. 1927, "the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis." The intent requirement enunciated in *Knorr Brake*, however, may be satisfied by showing reckless conduct by an attorney. *In re TCI, Ltd.,* 769 F.2d 441, 445-46 (7th Cir.1985).

Ordower, 826 F.2d at 1574.

In other words, after acknowledging *Knorr Brake's* holding that intentional misconduct is required, the *Ordower* Court ignored it and pivoted to *In re TCI* for the supposed "holding" that reckless conduct will suffice, without trying to reconcile the two results.

13

Indeed, all Seventh Circuit cases asserting that reckless indifference to the law constitutes vexatious intent trace their roots back to this one 1985 case – *In re TCI.*

But the reasoning in *TCI* is not compelling. The Court did not cite controlling authority. It never analyzed the wording of the statute, nor Congressional intent.

The *TCI* Court laid out its theory in two key passages. One explained:

> If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. ... [A] lawyer engages in bad faith by acting recklessly or with *indifference to the law*, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar, see *Sunstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir. 1976) (emphasis added).

769 F.2d at 445-46.

This passage wrongfully conflates objectively unreasonable conduct with vexatious conduct.

All lawyers make mistakes during the complex process of bringing a case to trial. According to the *TCI* Court, a mistake becomes "objectively unreasonable," and therefore sanctionable, if the attorney should have known better.

But to hold that a court can apply sanctions under section 1927's "unreasonable and vexatious" standard, based upon no more than a finding that the attorney should have known better, without a further finding that he actually did know better, amounts to reading the vexatious requirement out of the statute.

This flies in the face of the rules of statutory interpretation, it distorts the plain meaning of "vexatious" (requiring specific intent), and it undermines the express purpose of Congress.

Even if reckless and indifferent conduct can be said to satisfy some amorphous "bad faith standard," per *TCI*, that does not make reckless conduct vexatious, *i.e.* "lacking justification *and* intended to harass." Alternatively, defining "vexatious" so as to mean no more than reckless

14

indifference to established law would define intent to harass and/or multiply the proceedings out of the law.  Since a punitive statute like section 1927 must be strictly interpreted, *Badillo* 717 F.2d at 1166, a mere finding of reckless indifference to law should not suffice to impose sanctions.

The only authority cited in *TCI* for this "reckless indifference to the law" standard is *Sunstrand* supra.  But *Sunstrand* was not interpreting section 1927 nor any similar statutory language.  Rather, it was addressing the Supreme Court's interpretation of  §10(b) and SEC Rule 10b-5 of the Securities Exchange Act of 1934.

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), the Supreme Court held that a private cause of action for damages cannot lie for allegations of mere negligence under Section 10b and Rule 10b-5.  Ernst & Ernst was accused of failing to detect (through accounting audits) the company president's fraud.   However, based upon plaintiff's own admissions, the Supreme Court found this was merely a negligence claim, and so it dismissed the lawsuit.

In footnote 12 (425 U.S. at 194), however, the *Hochfelder* Court noted that both the Tenth and Second Circuits recognized a standard of reckless disregard for truth.  The *Hochfelder* Court stated:  "We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under §10(b) and Rule 10b-5."

This left open a gray area, which the Seventh Circuit chose to fill in by holding in *Sunstrand* that it would allow a private cause of action for reckless disregard for the truth.

In fact, the District Court in *Sunstrand* actually found that the defendant "deliberately or, at best, recklessly misrepresented SKI's nine months' earnings" just before selling the business. In addition, the defendant "conspired with … other officers … in making these misrepresentations."  553 F.2d at 1039.

This language indicates intent, and the Sunstrand Court called it the "functional equivalent" of  proving "deception".   With that in mind, *Sunstrand* endorsed a very stringent

definition of "reckless" as:

> a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care,  *Id.* at 1045.

Failure to investigate a complaint adequately does not come close to meeting this defiinition of "reckless".  Nor is it the functional equivalent of proving vexatious intent.

Moreover, as noted above, section 1927 is a punitive statute, to be construed strictly (*Badillo*); whereas the Securities Exchange Act is "remedial"  *Tcherepnin v. Knight*, 389 U. S. 332, 336 (1967), to be construed expansively to effectuate its remedial purposes. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151 (1972).

Hence, *Sunstrand's* holding should not be a paradigm for section 1927.  Under § 10(b), there is an expanse of gray area for reckless indifference.  Under section 1927, there is not.

In another passage, the *TCI* Court gave an alternative explanation:

> The amended Rule 11 sets out a standard that we think applies equally to Sec. 1927: a complaint must be "*warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law."  If a competent attorney would find *no basis for a legal argument*, then it does not interfere with zealous advocacy to penalize the *repetitious* assertion of that argument.

769 F.2d at 447. (Emphasis added).

This second passage conflates Rule 11 with 28 U.S.C. § 1927.  It argues that: when an attorney presents no colorable basis *in law* for his complaint, section 1927 sanctions can be imposed.  No authority is cited.

The upshot of these two passages, together, is to read into section 1927 a duty to make a proper investigation (of law) before filing a complaint.  But that is irreconcilable with subsequent Seventh Circuit cases.  See *e.g. Samuels*, 906 F.2d at 275 "Sec. 1927 … does not require 'reasonable' investigation.";  and *Dahnke,* supra (note 6) ("since the basis of  Judge Shabaz's imposition of sanctions seems to have been Dahnke's failure to investigate the legal foundation

for his claim before filing … section 1927 is not implicated here,")

Furthermore, it is not *TCI*'s holding either. A holding must be determined in light of the actual facts of the case. The passages above are merely dicta.

*TCI* was a bankruptcy case. Policy considerations in bankruptcy are different. Indeed, the *TCI* Court explained that it was not concerned about stifling creativity because bankruptcy courts are "not authorized to change the law of fixtures or real property in Illinois." *TCI,* 769 F.2d at 447-8 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979).

Moreover, although the district court did find (in *TCI*) that the attorney filed his initial complaint without proper investigation, and the action had no colorable basis in bankruptcy law, that was not why he was sanctioned. He was sanctioned because, after the initial complaint was dismissed, he filed a second complaint that was essentially the same as the first. 769 F.2d at 443-444. And after that was dismissed, he filed a third, like the second. *Id*. at 444. The judge only imposed sanctions – in the limited amount of $8,000 – for the *excess* costs resulting from filing the second and third complaints, thereby multiplying Court proceedings unreasonably and vexatiously. *Id*. at 444-5.

Hence, *In Re TCI* cannot stand for a *holding* that: an attorney can be sanctioned under section 1927 merely for filing a frivolous and objectively unreasonable complaint. Nor can it stand for a holding that failure to properly investigate the claim before filing shows vexatious intent. In effect, the *TCI* Court inferred vexatious *intent* because the attorney had fair warning, after the prior complaint was dismissed. *Id*. at 444-5 (District Court granted permission to file second amended complaint, but only "with the ominous note that 'there are certain risks you are going to run.'").

The Appellate Court appeared to be troubled, however, by the offending attorney's defense – that his bankruptcy business has high volume with low margins, and his conduct was not *malicious*. *Id.* at 446-7. The Court opined that *malice* is not required under section 1927. *Id.*

17

Thus, TCI did not hold that vexatious intent is *no* longer required (attorney was warned); nor that intentional multiplication of Court proceedings is *no* longer required (only the second and third filings were sanctioned); but rather that vexatiousness does not require malice.

Taken out of context, however, the dicta of *TCI* – that neither specific vexatious intent nor multiplication of court proceedings are required – has echoed in Seventh Circuit jurisprudence ever since, to the point that the true meaning of section 1927 and the original intent of Congress have been obscured.

To date, Fedder knows of no Seventh Circuit case holding that filing a frivolous lawsuit, without more, is sanctionable under section 1927.   But, Judge Herndon appears to have taken the next step away from the plain meaning of section 1927, turning it into a negligence tort targeting the plaintiff's bar.

Not only does he propose that legally frivolous lawsuits be sanctioned under section 1927, he suggests that factually groundless lawsuits (without more) can be sanctioned as well. Even the dicta of *TCI* does not go that far.

### E. The Only Case Cited By Addus As Precedent Is Not Comparable.

Addus *cites Claiborne v. Wisdom* 414 F.3d 715 (7th Cir. 2005) as an example in which sanctions were applied merely for filing a frivolous complaint.  That is not the case.

Claiborne alleged she had been sexually harassed by her apartment manager and evicted for refusing his advances.  She further alleged that other women in the apartment complex had been treated similarly.  *Id*. at 717.

In the Complaint, Claiborn's attorney, Boyd, represented that she (Boyd) had interviewed the witnesses prior to filing, and the witnesses had corroborated plaintiff's story.  *Id.* at 718.

Seven months later, however, after deposing said witnesses, Boyd admitted that: To her "surprise and shock … the witnesses denied making the above-referenced statements and they accused Plaintiff and her counsel of fabricating the claims." *Id.*

18

The District Court then dismissed the case and, after a hearing, imposed sanctions against Boyd under 28 U.S.C. § 1927.  *Id.*  Boyd was ordered to pay the full amount of attorney's fees.  *Id*.  The Seventh Circuit upheld this ruling.  *Id.* at 717.

Boyd's misconduct was unlike Fedder's.  It did not consist merely of filing a complaint deemed by the Court to be legally frivolous or factually groundless.  Nor did it consist merely of failing to research the complaint adequately before filing.

The facts (as reported) show that Boyd misrepresented to the Court that she had interviewed the witnesses before filing, and they corroborated the allegations.  Her signature on the complaint affirmed this to be true. Yet, at deposition, the witnesses said Boyd had fabricated their claims.

On that basis, the District Court had good reason to conclude that Counsel deliberately misled the Court.  If so, that was an intentionally vexatious act, presumably designed to multiply the charges and bully the defendants into a favorable settlement.

Perhaps Boyd acted without malice.  Perhaps she just took Claiborne's word that she (Claiborne) had spoken to the witnesses.  But, when she averred that she personally interviewed those witnesses, she apparently lied to the Court.

This lie was not minor or peripheral.  It went to the heart of the Complaint, and constituted bad faith vexatious conduct, which justified section 1927 sanctions.  Without those witnesses, the case was not viable, by Boyd's own admission.

Fedder still knows of no Seventh Circuit case which holds that filing a legally frivolous or factually groundless complaint, or even one which was not researched adequately, is sufficient to justify section 1927 sanctions.

Therefore, Fedder respectfully asks this Court to reconsider, clarify, and restore the original intent of Congress to limit Section 1927 sanctions only to intentionally vexatious misconduct which multiplies the proceedings before the Court.

**IV.  JUDGE HERNDON'S IMPOSITION OF SANCTIONS WITHOUT A HEARING WAS A VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.**

Judge Herndon issued the Order for section 1927 sanctions in Document 150, the last document he issued in this case.  It was not preceded by a Show Cause Order.  Judge Herndon never even mentioned section 1927, nor the possibility of sanctions against Fedder, before Document 150.

In his appeal Brief, Fedder pointed out that: To assess him $92,000 without a hearing is a violation of his right to due process under the Fourteenth Amendment.  Brief  at 33-8.  Counsel is entitled to "all appropriate protections of due process available under the law".  Conference Report at 8.  This is black letter law.

In Response, Addus suggests that Fedder did have an adequate hearing because: when Addus moved for attorney's fees under 42 U.S.C. § 1988, Fedder had a chance to answer on behalf of his client.

This argument ignores controlling precedent.  In *Hamer v County of Lake,* 819 F.2d 1362 (7th Cir.1987), the District Court ordered plaintiff's attorney to pay attorney's fees under 42 U.S.C. § 1988.  The Court did give notice to the attorney first, and then held a proper section 1988 hearing.  However, the Seventh Circuit voided the order because 42 U.S.C. § 1988 does not authorize sanctions against attorneys.  Furthermore, the Seventh Circuit declined to substitute section 1927 sanctions, because there had been no section 1927 hearing.  The Court held that a section 1988 hearing cannot substitute for a section 1927 hearing.

Similarly, in *Samuels v. Wilder*, the District Court imposed attorney sanctions under Rule 11.  The Seventh Circuit voided those sanctions because the misconduct did not involve the pleadings.  Here, too, the Seventh Circuit thought section 1927 sanctions would apply, but declined to switch to section 1927 because "the differences between statute [1927] and rule [11] [might] justify a difference in outcome."  906 F.2d at 275.

If a section 1988 hearing (in *Hamer*) and a Rule 11 hearing (in *Samuels*) were not sufficient to justify section 1927 sanctions, even though the attorney had actual notice in each case that he might be personally charged for attorney's fees (but under the wrong rule), then it cannot suffice in Fedder's case where he had no such notice at all.

In *Johnson v. Cherry*, 422 F.3d 540 (7th Cir 2005), plaintiff's attorney alleged that her signature was forged on a document filed by plaintiff, seeking a new attorney. The District Court held a hearing to determine whether it was forged. After finding it was not, the District Court issued section 1927 sanctions against the attorney, *sua sponte,* for her false claim which multiplied the proceedings. The Seventh Circuit reversed, holding these sanctions to be improper "because the court [did not] first notify[ ] [the attorney] that it was contemplating that step and giv[e] her an adequate opportunity to respond."  *Id*. at 543.  That was an "abuse of the court's sanction[ing] power."  *Id*. at 549..

It follows that Judge Herndon's *sua sponte* findings against Fedder, even if well considered, cannot suffice to impose sanctions. Judge Herndon neglected his basic duty as a judge – to first notify Fedder that he was contemplating attorney sanctions, and then give Fedder an opportunity to respond.

Even without those precedents, the logic is inescapable that 42 U.S.C. § 1988 and 28 U.S.C. § 1927 are not co-extensive. As discussed fully in part III above:

> 1. One targets only parties to the dispute; the other only attorneys.
>
> 2. One is compensatory, authorizing attorney's fees to be paid for a violation; the other punitive, authorizing only excess attorney's fees caused by the misconduct.
>
> 3. One addresses frivolous and groundless legal actions; the other addresses unreasonably vexatious conduct which multiplies the proceedings.
>
> 4. One requires that the conduct be objectively unreasonable; the other requires specific intent to vexatiously multiply the proceedings.

5. One holds the signing attorney accountable for investigating the complaint adequately; the other does not mandate any duty to investigate.

In defending his client against Addus' 42 U.S.C. § 1988 Motion, Fedder had no reason to challenge Judge Herndon's interpretation of 28 U.S.C. § 1927 because no such interpretation existed yet. Nor did Fedder have reason to argue that Tate brought his claims in good faith, because good faith is not a defense to section 1988. *Thornton*, 787 F.2d. at 1154.

Fedder also had no reason to argue that Tate's claims against Addus did not multiply the Court's proceedings, or that they were not offered for vexatious purpose. Those are not elements of section1988 fee-shifting.

Conversely, Fedder had no reason to object that merely filing a frivolous complaint was insufficient grounds (*per se*) to assess attorney's fees. It is sufficient under section 1988, but not under 28 U.S.C. § 1927.

In addition, Judge Herndon claimed that Fedder acted in "bad faith" because he did not do his homework before filing. If Fedder had been given notice that this was at issue, he would have offered evidence that he did research the claims extensively, both in law and fact, before filing.

By substituting section 1927 sanctions against Fedder for section 1988 sanctions against Tate, without notice or hearing, Judge Herndon denied Fedder a chance to present any of these specific defenses against section 1927 sanctions, or create a record for the Appellate Court to review.

Finally, punitive statutes like section 1927 must allow for equitable defenses not available under section 1988. *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1439 (7th Cir. 1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1275, 1281 (2d Cir.1986).

Fedder never got the opportunity to make any of these defenses.

## V. JUDGE HERNDON'S ARTICULATED FINDINGS DO NOT SUPPORT 1927 SANCTIONS AS A MATTER OF LAW

Judge Herndon's only mention of section 1927, or even the possibility of attorney sanctions, is contained in Document 150, and then only on the last five pages. Therefore, this Court must look to those five pages to discern the Judge's reasoning.

His articulated reasons may be characterized as: (#1) Plaintiff's initial Complaint was objectively unreasonable with respect to: (a) its legal theories (frivolous); and/or (b) its factual allegations (groundless); (#2) Fedder would have known the Complaint was unreasonable if he had properly researched the case before filing; and (#3) after hearing deposition testimony and/or reviewing Defendants' affidavits, Fedder should have realized he no longer had a viable claim against Addus.

Even if all of those "findings" were true, they would not justify the sanction Judge Herndon imposed.

First of all, if Judge Herndon truly thought Fedder's primary offense was failing to dismiss the charges against Addus voluntarily at some later date, such as after depositions were taken, then it would have been an abuse of discretion for him to charge Fedder for Addus' entire attorneys' fees, encompassing work done before deposition testimony was taken.

Section 1927 only authorizes sanctions for *excessive* fees. To hold Fedder specifically accountable for not dropping the charges, Judge Herndon would have had to first assume that the Complaint was originally viable (or at least not sanctionable), and then identify some subsequent date when Fedder became aware (or perhaps should have become aware), from all the facts in evidence, that the charges against Addus should be dropped.

Determining the right date would have required a hearing, because there are factual questions involved. One could not just use the date when the Addus Defendants testified because Fedder is not obligated to believe their testimony, just because they say so. He and Tate

23

should have been entitled to review the evidence, and question their own witnesses about the credibility of the Addus Defendants.  That would have taken time.

But there was no hearing.  Judge Herndon never identified a specific date when Fedder should have dropped the charges.  And, the factual issues concerning timing were not even discussed in document 150.  Simply put, Judge Herndon never developed this argument.  It follows that articulated reason #3 above should carry no weight in this appeal.

Furthermore, by ordering Fedder to pay Addus' *entire* attorney's fees, Judge Herndon in effect ruled the entire Complaint excessive.  Therefore, the real issue, as identified by Judge Herndon, is whether Fedder's act of filing the Complaint merited sanctions under section 1927.

That being so, it is unreasonable for Judge Herndon to hold that Fedder should have anticipated the Defendants' deposition testimony, or their affidavits in support of Summary Judgment, when he filed Tate's Complaint.  The Supreme Court has expressly warned against such post-hoc analysis.  *Christiansburg*, 434 U.S. at 421-22 ("This kind of hindsight logic could discourage all but the most airtight claims.")

That fully negates reason #3, even as evidence. The issue in this appeal is whether the Complaint itself was vexatious.  Discussions of depositions and affidavits are red herrings.

Second, section 1927 does not authorize sanctions for failing to investigate a claim before filing.  See *Samuels* and *Dahnke* supra.  That negates reason #2 as well.

Only reason #1 remains  – that Tate's Complaint was: (a) legally frivolous; and/or (b) factually groundless at the time of filing.

In part III above, Fedder argues that the plain language of section 1927, as well as Congressional intent, do not support the notion that merely filing a frivolous complaint is sufficient to impose sanctions under section 1927.

## VI. EVEN UNDER TCI'S OBJECTIVE BAD FAITH STANDARD, ATTORNEY SANCTIONS ARE NOT WARRANTED

However, even if the Seventh Circuit rejects that analysis and adopts the "objective bad faith" standard of *In Re TCI* and its progeny, that standard applies only to complaints that show reckless disregard for law.  Under *TCI*, this Court must focus on whether Tate's legal theory was so obviously frivolous as to show that Fedder acted vexatiously in filing the Complaint.  There is no precedent in the Seventh Circuit for imposing Section 1927 sanctions merely because a complaint turns out to be factually groundless.

Tate's claims against Addus are based upon Section 1981 (racial discrimination) and Section 1983 (retaliation for opposing sexual predation by his supervisor, Farmer).

In his Response (Doc 26) to Addus' Motion to Dismiss, Fedder acknowledged that his legal theory was not based upon Addus' personal animus towards Tate, due to race or retaliation. Rather, he argued that the Addus Defendants knowingly conspired with the DRS Defendants (particularly Ancell) to facilitate DRS' plan of discrimination/retaliation.   Doc 26, p. 11.  The DRS Defendants were motivated by personal animus.  The Addus Defendants may well have been motivated only by a "cold-blooded … calculus (such as gaining jobs for a sister and daughter)" *Id.*.

In a nutshell, Fedder argued that the Addus Defendants acted under color of state law, through this conspiracy; and that the unlawful motives of the DRS Defendants could be attributed to the Addus Defendants, through their intentional joint action.

Fedder did nothing to mislead the Court about this theory.  Judge Herndon had ample opportunity to dismiss these claims.  He did not do so.  (Doc xx).  That means he found the legal theory to be viable (if the facts of the conspiracy could be proved).

Even if Judge Herndon has since changed his mind, he cannot charge Fedder $92,000 because he (Herndon) made a mistake of law.  If Fedder's legal theory was so obviously

frivolous, then Judge Herndon (having done his homework) would never have let the case proceed.

But he did let it proceed. Therefore, even under *TCI*, Judge Herndon's application of sanctions is an abuse of discretion.

## VII. JUDGE HERNDON'S FINDING THAT THE COMPLAINT HAD NO BASIS IN FACT IS AN ABUSE OF DISCRETION

Judge Herndon and the Addus Defendants argue that the Plaintiff has not one iota of evidence to support his conspiracy theory. They point out:

> 1. The Addus Defendants have testified that they did not know of any conspiracy.

> 2. Humphrey testified that she had no knowledge of any disciplinary actions against Tate.

> 3. Tate himself testified he had no *personal* knowledge of a conspiracy.

Doc 150 at 9; Def's Brief at x

They claim this proves that Fedder and Tate have no evidence of a conspiracy.

This is bad logic. Conspiracies are difficult to prove. The victim rarely has *personal* knowledge . And, the conspirators will almost always deny it.

But Fedder and Tate have assembled a number of pieces of evidence, both direct and circumstantial to raise a question of fact.

First, Humphrey's testimony at deposition that she had no knowledge that Tate was ever disciplined was false. It is undisputed that she participated in, and provided evidence for two disciplinary actions against Tate (and McCain). Doc 104-1 ¶¶(119-121, 136-175, 253-4,339-378); Doc 103-13 ¶¶(6,15-16,22,35-45); Doc 103-8.¶¶(2-6,19-20,55-75,85); Doc 103-18 ¶¶(103-125); Doc 111; Doc 103-41, Doc 103-42, Doc 103-44.

In the few words left, Fedder cannot do justice to all the evidence. He refers the Court to Doc 134, pp(9-20) for a good summary of the evidence aimed specifically at Addus. But the

following <u>provides some basic colorable</u> evidence to support a claim that Addus participated in a conspiracy against Tate:

> A. Before he retired, Defendant Farmer wrote a private e-mail to Defendant Standerfer blaming Tate for Green's allegations against him and calling for retaliation.  Doc 103-24.  He also blamed it on an Hispanic conspiracy against him.  Doc 103-5 ¶¶(5-11,17,21-41)
>
> B. Gayle Johnson testified that she was asked by Ancell to spy on Tate as a condition of being hired through Addus.  Doc 103-6 ¶¶(65-72)
>
> C. Suzie Jordan testified that she was hired by Addus to spy on Tate, and then fired  after refusing to do so.  Doc 103-7 ¶¶(1-22)
>
> D. Humphrey told her son and ex-husband about Tate: "He's not going to be around much longer.  We<u>'re</u> making sure of that," and "He's done some bad things and he's going to pay for it.  <u>He's not going to be employed there much longer.</u>"  Doc 103-3 ¶¶(1-10); Doc 103-4 ¶¶(1-10).

Note that Humphrey said "we" (indicating she was part of the plan) are "making sure" (meaning it was coercive) that he will not "be employed there much longer" (meaning he will be fired).  She also said he's done some "bad things".  That is not a reference to nodding off at a meeting, or missing an appointment.

Moreover, Humphrey made this statement before being deposed.  Yet, in deposition, she claimed to have no knowledge of any conspiracy to get Tate fired..

She was lying.

But what is most disturbing is Judge Herndon's reaction.  He has never mentioned any of this evidence.  Not Farmer's e-mail, not Humphrey's confession, not Johnson's affidavit, nor Jordan's affidavit.

Not even once.

This is a patent abuse of discretion.

Respectfully Submitted,<br>
s/Richard Fedder<br>
(Appellant)

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(b), which permits a maximum 7,000 word Reply Brief.

This Brief contains 6,997 words, excluding those parts exempted by Fed. R. App. P. 32(a)(7)(b)(iii).

This Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman typeface.

Respectfully Submitted,

s/Richard Fedder
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2012, I electronically filed the above Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that to my knowledge all participants (or their agents) in this case are registered CM/ECF users, and it is my understanding that service will be provided by the CM/ECF system to said participants (or agents) as listed below:

Carmen N. Couden
Bernard Bobber
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, Wi. 53202-5306
414-271-2400
414-297-4900 (fax)
ccouden@foley.com
bbobber@foley.com


Respectfully Submitted,
s/Richard Fedder
(Appellant)